I concur with the main opinion that the proponents, Ruth Morrow and Pamela Morrow, were entitled to a judgment as a matter of law ("JML") on the issues of the formal validity and execution of Bernice Grimes's will. I dissent from that portion of the main opinion that holds that Ruth Morrow and Pamela Morrow were not entitled to a JML on the issues of testamentary capacity and undue influence. *Page 1150 
The contestants, Annie Jean Helms, Mary Jon Brown, Sharon Wallace, Susan Grimes Mitchum, and Robert Grimes, alleged that Bernice Grimes lacked testamentary capacity to execute her will and that Ruth Morrow and Pamela Morrow unduly influenced Bernice Grimes in the execution of her will. Ruth Morrow and Pamela Morrow contest both claims.
Testamentary capacity requires only that the testator possess
 "'mind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make — to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other.'"
Ex parte Baker, 709 So.2d 7, 10 (Ala. 1997) (quoting Bolan v. Bolan,611 So.2d 1051, 1057 (Ala. 1993)). "Every testator is presumed to have the capacity to make a will . . . and the burden is on the contestant to prove the lack of testamentary capacity." Bolan v. Bolan, 611 So.2d 1051,1057 (Ala. 1993). Moreover, "[t]he standard for finding testamentary capacity is not a high one . . . ." Smith v. Vice, 641 So.2d 785, 786
(Ala. 1994).
Presiding Judge Yates noted in her special concurrence to the Court of Civil Appeals' opinion that "[t]he contestants presented no evidence indicating that the decedent lacked testamentary capacity on January 15, 1997, when she signed her will." Morrow v. Helms, [Ms. 2990942, March 16, 2001] 873 So.2d 1132, 1136 (Ala.Civ.App. 2001) (Yates, P.J., concurring specially). At trial, none of the witnesses testified that Bernice Grimes lacked the mind or memory to recall or remember her property or the capacity to understand what she was doing when she executed her will. The main opinion in this case nevertheless holds that the contestants presented evidence sufficient to overcome the presumption that Bernice Grimes had the capacity to make a will because the contestants demonstrated that she had been diagnosed with cancer, that she had experienced some pain associated with the cancer and had taken Lortab for the pain, and that she was upset about her cancer diagnosis and her husband's recent death from cancer. 873 So.2d at 1145. The main opinion concedes "the record does not contain direct evidence that Bernice actually ingested Lortab on January 15, 1997." 873 So.2d at 1147. The main opinion also concedes that the will's proponents presented witnesses who testified that Bernice "appeared to be `of sound mind.'" 873 So.2d at 1148.
The main opinion in this case substantially alters the standard for finding that a testator lacked testamentary capacity. The main opinion holds that the mere possibility that Bernice Grimes may have been under the influence of a prescription painkiller when she executed her will creates a question of fact for a jury to resolve as to her testamentary capacity.[1] The main opinion therefore holds that the contestants to a will who allege that the testator lacked testamentary capacity can satisfy their burden of proof if they can demonstrate by circumstantial evidence the mere possibility that the testator may have lacked the capacity to execute a will, namely, evidence indicating that the testator used prescription pain medication. The main opinion does not require the contestants to present evidence indicating *Page 1151 
that the testator did not, in fact, understand the nature and consequences of her actions.
In Smith v. Vice this Court stated: "`The fact that the testator is under the immediate influence of intoxicating liquor or drugs at the time he performs the testamentary act does not invalidate his will on the ground of a lack of testamentary capacity.'" 641 So.2d at 788 (emphasis added) (quoting 79 Am. Jur.2d Wills § 83 (1975)). The main opinion in this case effectively overrules Smith v. Vice and creates a presumption that the fact that the testator is taking prescription pain medication when the testator executes a will creates a jury question as to testamentary capacity in the event of a will contest, and evidence indicating that a testator took prescription pain medication, or even evidence indicating that a testator had a prescription for pain medication, is sufficient to sustain a jury's verdict that a testator lacked testamentary capacity.
Finally, as to the question of undue influence, I agree with the conclusion reached by Presiding Judge Yates of the Court of Civil Appeals that the contestant's testimony "at best indicates that [Bernice Grimes's] sister and niece spent a lot of time with her from the time she was diagnosed with cancer in January 1997 until she died in May 1998." 873 So.2d at 1137 (Yates, P.J., concurring specially). In addition, in light of the fact that Bernice Grimes's physician, Dr. William Reynolds, suggested to Bernice on January 3, 1997, that her "family situation need[ed] to be put in order," and that because she was taking Lortab, she should not drive a car, I find it entirely unremarkable that 12 days later Bernice asked a close relative to drive her to an attorney's office to prepare a will.
For the foregoing reasons, I dissent from this Court's reversal of the judgment of the Court of Civil Appeals on the issues of testamentary capacity and undue influence.
[1] The main opinion focuses on Bernice Grimes's prescription for Lortab because the contestants presented a witness, Kathy Bozeman, a registered nurse, who testified that Lortab may affect a patient's ability to concentrate or to know what he or she is doing.